UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                      02-CR-1372 (RPP)
- v. -

                                                                      **OPINION & ORDER**

LARRY WILLIAMS,

                    Defendant.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      On December 17, 2012, after his 2004 conviction of four counts at trial and nearly nine years of subsequent post-trial litigation, Defendant Larry Williams (the "Defendant" or "Williams") entered into a post-trial plea agreement with the United States Attorneys' Office for the Southern District of New York (the "Government"). (Plea Agreement, ECF No. 382-1.) In that plea agreement, in exchange for the Government's agreement to file an application for a nolle prosequi dismissing with prejudice the four counts of which Williams was convicted at trial, Williams agreed to plead guilty to a one-count criminal information, S6 02 Cr. 1372 (BSJ), charging him with participation in a crack cocaine distribution conspiracy that took place "in or about 2000." (Id. at 3; S6 Information ¶ 1, ECF No. 342.) The plea agreement also provided that the Government would file a prior felony information, and identified as a prior felony a state felony narcotics conviction in Newport News, Virginia, that became final on April 30, 2001. (Plea Agreement at 3; Prior Felony Information, ECF No. 341.) The plea agreement provides that, pursuant to the enhanced sentencing provisions of 21 U.S.C. § 841(b)(1)(C) applicable because of Williams' prior felony narcotics conviction, count one of the S6 information would carry a maximum sentence of thirty years of imprisonment. (Plea Agreement at 3.)

1

On December 19, 2012, after a lengthy allocution during which Williams acknowledged that he understood that his maximum sentence within the plea agreement was thirty years, Williams entered a guilty plea before the Honorable Barbara S. Jones to the single-count S6 information, pursuant to the terms of the plea agreement. (Plea Hr'g Tr., Dec. 19, 2012.) After the plea had been entered, Judge Jones retired from the District Court. Williams' case was then transferred to this Judge for the purposes of sentencing.

After pleading guilty to the single-count S6 information, but prior to sentencing, the Defense identified a mistake made by the parties when they entered into the plea agreement in December 2012: that Williams was not, in fact, subject to the enhanced sentencing provisions of 21 U.S.C. § 841(b)(1)(C). Williams was not eligible for the prior felony enhancement from twenty years to thirty years maximum, because the crack cocaine distribution conspiracy to which Williams pleaded guilty in the S6 information is described as taking place "in or about 2000," and the prior felony information listed a felony that became final in 2001. Though the Government initially proposed a plea agreement with a crack cocaine distribution conspiracy that lasted from 2000 to 2002, the conspiracy period was shortened to 2000 at the behest of the Defense, and both the 2012 plea agreement and the S6 information reflect this revision, shortening the end of the crime to which Williams was pleading guilty to reflect this revision. (Gov't's Letter-Opp'n 3, Feb. 25, 2014, ECF No. 384.)

Under the 2012 plea agreement, therefore, Williams' prior felony conviction became final after the end of the crack cocaine distribution conspiracy charged in the S6 information. For the purposes of 21 U.S.C. § 841(b)(1), a defendant's sentence may not be enhanced unless the defendant's federal offense occurred, at least in part, after the prior conviction became "final." A "prior conviction is final for purposes of recidivist sentencing when all avenues of

2

direct appellate review have been exhausted." United States v. Lovell, 16 F.3d 494, 497 (2d Cir. 1994).  Because the S6 information limited the time of the crack cocaine distribution conspiracy to 2000 and the prior narcotics felony conviction did not become final until April 30, 2001, Williams is not, and was not at the time the plea was entered, subject to enhanced sentencing under 21 U.S.C. § 841(b)(1)(C).  Therefore, under the 2012 plea agreement, this Court may not sentence Williams to more than twenty years' imprisonment on the sole count of the S6 information, rather than the thirty years' term specified by the parties in the language of the plea agreement.

At issue here is the enforceability of that plea agreement in light of the mistake in its terms.  The Defense argues that the 2012 plea agreement is enforceable and binding on its drafter, the Government, and requests to move forward with sentencing on that plea agreement. (Def.'s Letter-Mot., Feb. 12, 2014, ECF No. 382; Def.'s Letter-Reply, Mar. 14, 2014, ECF No. 389.)  The Government takes the position that, as a result of the mutual mistake by the Government and the Defense that the maximum sentence faced by Williams was thirty years, it is not bound by the plea agreement.  (See generally Gov't's Letter-Opp'n.)  The Court heard argument on this issue on May 20, 2014.  (Oral Arg. Tr. ("5/20/14 Tr."), May 20, 2014.)

For the reasons discussed herein, the Court finds that as a result of the parties' mistake in the re-drafting of the 2012 plea agreement, the plea agreement is void.

I. **BACKGROUND**

   **A. Williams' Trial, Conviction, and Post-Conviction Litigation**

   On July 8, 2004, the Government filed a four-count indictment in the Southern District of New York, Indictment S3 02 Cr. 1372 (BSJ), against Larry Williams and his alleged co-conspirators.  (S3 Indictment, ECF No. 92.)  Count one charged that Williams and others

conspired to distribute, and possess with intent to distribute, fifty grams or more of crack cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846.  Count two charged that Williams counseled, commanded, induced, procured or caused the intentional killing of Jason Henry, in violation of 21 U.S.C. § 848(e)(1)(A).  Count three charged that during and in relation to the narcotics conspiracy charged in count one, Williams caused the intentional murder of Jason Henry, in violation of 18 U.S.C. §§ 924(i) and 2.  Count four charged that Williams and others used, carried, or discharged firearms during and in relation to the narcotics conspiracy charged in count one, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.

After a trial before Judge Jones, a jury found Williams guilty on all four counts.  (Verdict Form, October 27, 2004, ECF No. 164.)  After his conviction, Williams filed several post-trial motions pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, commencing nearly nine years of post-trial litigation.  (Def.'s Letter-Mot. at 1; Gov't's Letter-Opp'n at 2.)  While Williams' motions were pending, the parties began negotiating a post-trial plea agreement.

### B. Plea Agreement

On December 17, 2012, the parties agreed to a post-trial disposition "to resolve all outstanding factual and legal issues relating to the defendant's conviction and pending sentence on the charges in indictment S3 02 CR 1372."  (Plea Agreement at 3.)  The agreement provided that Williams would plead guilty to his participation in a conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846, and would consent to the filing of a prior felony information, pursuant to 21 U.S.C. § 851.  (Id.)  The felony listed in the prior felony information was a state felony narcotics conviction in Newport News, Virginia, that became final on April 30, 2001.  (Id. at 6; Prior Felony Information at 1.)  In the plea agreement, the parties stipulated to a statutory maximum sentence of thirty years.  (Plea Agreement at 7.)  The thirty-

year statutory maximum sentence was an enhanced sentence that applied because of Williams' prior felony narcotics conviction. A defendant convicted of the drug distribution conspiracy to which Williams pled guilty would normally face "a term of imprisonment of not more than twenty years," but, "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than thirty years." 21 U.S.C. § 841(b)(1)(C).

The plea agreement, as proposed by the Government, originally charged that a crack cocaine distribution conspiracy, taking place in the Southern District of New York and elsewhere, ran from 2000 to 2002. (Gov't's Letter-Opp'n at 3.) At the request of Williams' attorney, Alexander E. Eisemann, Esq., the Government agreed in December 2012, shortly before Williams' guilty plea was entered, to narrow the time period for the conspiracy to the year 2000.[1] (Id.; 5/20/14 Tr. at 3-5.) The final language of the plea agreement, as entered into by the parties, provided that Williams would plead guilty to a crack cocaine distribution conspiracy that took place "in or about 2000." (Plea Agreement at 3.) The S6 information listed the time of the crack cocaine distribution conspiracy as "in or about 2000." (S6 Information ¶ 1.)

---

[1] The Defense's request to shorten the federal crack cocaine distribution conspiracy period was based on the Defense's position that Williams began purchasing drugs at the direction of Virginia state authorities sometime between 2000 and 2002 and that, in light of such cooperation, his participation in a crack cocaine distribution conspiracy after 2000 was authorized by those state authorities. (5/20/14 Tr. at 3-5.) It is well established that where the government has shown that a conspiracy existed and that a given defendant was a member of it, his membership is presumed to continue until the last overt act by any of the coconspirators, unless the defendant proves that the conspiracy was terminated or that he took affirmative steps to withdraw. See, e.g., United States v. Flaharty, 295 F.3d 182, 192 (2d Cir. 2002). Even the arrest of a defendant does not, in all cases, constitute withdrawal from a drug conspiracy. See id. ("While arrest or incarceration may constitute a withdrawal from a conspiracy, it does not follow that in every instance it must.") (internal citation omitted). Whether Williams' cooperation with state authorities constituted withdrawal from a separate federal drug conspiracy is questionable. Rather than dispute the validity of the Defense's claim of withdrawal, however, the Government agreed to limit the time period of the federal crack cocaine distribution conspiracy to the year 2000, operating under the mistaken belief that such an alteration would have no effect on the thirty-year maximum term of imprisonment provided for in the plea agreement. (5/20/14 Tr. at 4.)

In exchange for this plea of guilty, the Government agreed to file an application for a nolle prosequi dismissing with prejudice counts one through four of indictment S3 02 Cr. 1372 (BSJ), of which Williams was convicted at trial in October 2004. (Plea Agreement at 3.)

On December 19, 2012, Williams entered a guilty plea in front of Judge Jones. (Plea Hr'g Tr., Dec. 19, 2012.) During the plea allocution, Williams pleaded guilty to the S6 information charging him with participation in a federal crack cocaine distribution conspiracy in 2000, (id. at 13), stated that he understood that a prior felony information would be filed, (id. at 13-14), and that, as a result, he understood that he faced a maximum term of imprisonment of thirty years. (Id.) Judge Jones accepted Williams' guilty plea and entered a judgment of guilty on the sole count of the S6 information. (Id. at 31.) The case was then transferred to this Court for sentencing.

### C. The Mutual Mistake in the 2012 Plea Agreement

In July 2013, prior to sentencing before this Court, Alexander Eisemann, attorney for Larry Williams, contacted the Government to identify a mistake in the 2012 plea agreement. (Gov't's Letter-Opp'n at 5.) Based on the language of the plea agreement, Williams is not eligible for an enhanced sentence pursuant to 21 U.S.C. § 841(b)(1)(C) because his prior felony narcotics conviction became final on April 30, 2001, after the end of the crack cocaine distribution conspiracy in this district in 2000 charged in the S6 information. (Id.) The Government agreed that, with regard to the sole count of the S6 information—the crack cocaine distribution conspiracy now ending in 2000—the applicable statutory maximum sentence was twenty years' imprisonment, not the thirty years' term specified in the plea agreement. (Id.)

In a letter on December 9, 2013, the Government offered to enter into a new plea agreement with Williams. (Gov't's Offer Letter 3, Dec. 9, 2013.) In this offer, the Government

6

proposed that Williams plead guilty to a crack cocaine distribution conspiracy extending past the date on which his prior narcotics felony became final—that is, the same substantive plea agreement that Williams had entered into previously, except that the crack cocaine distribution conspiracy period would extend to 2002. (Id.) This change would have subjected Williams to a thirty-year maximum term of imprisonment. (Id.) At a hearing before this Court on February 3, 2014, Williams rejected the Government's proposal, (Tr. of Feb. 3, 2014 Hr'g ("2/3/14 Tr.") at 5-6, 35), and the Government made clear that this offer expired at the February 3, 2014, hearing. (Id. at 35.)

The Defense now moves this Court to enforce the 2012 plea agreement and proceed to sentencing Larry Williams on the sole count of the S6 information. (Def.'s Letter-Mot. at 1.) The Government opposes this motion, arguing that the plea agreement is voidable and is not binding on the Government. (Gov't's Letter-Opp'n at 1.) The Government seeks to proceed to sentencing Larry Williams on all counts of which Williams has been found guilty, including both the four counts of conviction and the sole count of the S6 information.[2] (Id. at 1-2.)

## II.   LEGAL STANDARD

Plea agreements are interpreted under the law of contracts. See United States v. Woltmann, 610 F.3d 37, 39-40 (2d Cir. 2010). A court interpreting a plea agreement must consider "the reasonable understanding of the parties as to the terms of the agreement." Id. (internal citation omitted). Because plea agreements are "unique contracts," courts interpreting plea agreements must "temper the application of ordinary contract principles with special due

---

[2] The Government has consented to Williams' withdrawal of his guilty plea to the S6 information, should he choose to do so. (Gov't's Letter-Opp'n at 10 n.9.)

process concerns for fairness and the adequacy of procedural safeguards." Id. (internal citation omitted).

New York law applies to the interpretation of this plea agreement. See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997). Under New York law, a contract "entered into under a mutual mistake of fact is voidable and subject to rescission."[3] Gould v. Board of Educ. Of Sewanhaka Cent. High School Dist., 81 N.Y.2d 446, 453 (1993). To warrant rescission, or voidance, of the contract, "the mutual mistake must exist at the time the contract is entered into and must be substantial." Id. Federal courts applying New York contract law have similarly recognized that "rescission is appropriate only when the parties have made a mutual mistake as to a fact or assumption which goes to the heart of the agreement." Travelers Indem. Co. of Illinois v. CDL Hotels USA, Inc., 322 F. Supp. 2d 482, 497 (S.D.N.Y. 2004) (internal citation omitted).

By contrast, "a mistake of law arises when persons having full knowledge of the facts come to an erroneous conclusion as to their legal effect." Thor v. Tropical Fruit Co., 281 F. 740, 743 (2d Cir. 1922). When a party's error as to the applicable law "could have been discovered upon diligent research," it is not a mistake that destroys the obligations under the contract. Weissman v. Bondy & Schloss, 660 N.Y.S.2d 115, 118 (App. Div. 1997). The Second Restatement of Contracts provides that "where a mistake of both parties at the time a contract

---

[3] Both voidance and reformation are appropriate remedies where a contract includes a mutual mistake of fact. See Restatement (Second) of Contracts §§ 152, 155. Here, the Government has offered Williams a new plea agreement that would extend the period of the federal drug distribution conspiracy to run from 2000 to 2002, so that Williams would enter a plea of guilty to a longer federal drug conspiracy, thus rendering Williams eligible for the thirty-year maximum term contemplated by the parties in the 2012 plea agreement. (Gov't's Offer Letter at 3.) However, Williams has rejected the reformed plea agreement. (5/20/14 Tr. at 14-16.) Modification of the terms of the plea agreement over Williams' objection would be incompatible with the constitutional right of any criminal defendant to enter a knowing and voluntary plea of guilty. See McCarthy v. United States, 394 U.S. 459, 466 (1969) ("[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void."). Therefore, absent Williams' consent to enter into a new plea agreement, the Court must either enforce the 2012 plea agreement as written or void the plea agreement in its entirety.

was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk." Restatement (Second) of Contracts § 152 (1981).

### III. DISCUSSION

Both parties are in agreement that Larry Williams entered a valid plea of guilty before Judge Jones. (Gov't's Letter-Opp'n at 10 n.9; Def.'s Letter-Mot. at 3.) Both parties are similarly in agreement that a mutual mistake was made in the plea agreement pursuant to which Williams entered his plea of guilty. (Gov't's Letter-Opp'n at 10; Def.'s Letter-Mot. at 5.) However, the parties take opposing positions on the nature of the mutual mistake and the effect that the mutual mistake has on the enforceability of the plea agreement against the Government. Having considered the arguments on both sides and for the reasons discussed herein, the Court finds that the plea agreement is void.

#### A. The Nature of the Mutual Mistake

The Government and the Defense made a mutual mistake at the time that the plea agreement was agreed to and entered into. They believed, mistakenly, that Williams' 2001 "prior" felony narcotics conviction became final earlier in time than the crack cocaine distribution conspiracy to which Williams was pleading guilty. Because the Defense maintained that Williams' cooperation with Virginia state authorities limited the time of the federal drug conspiracy and the parties accordingly described the conspiracy term as limited to the year 2000, Williams is subject to a statutory maximum sentence of twenty years' imprisonment, rather than the thirty-year term contemplated by the parties and stated in the agreement. The Government argues that this mutual mistake was a mistake of fact, while the Defense argues that the mutual mistake was a mistake of law.

In support of its argument that the mutual mistake was a mistake of law, the Defense analogizes to <u>Symphony Space v. Pergola Props.</u>, 88 N.Y.2d 466, 485 (1996), in which the New York Court of Appeals held that "a mere misreading of the applicable law" by the parties did not require voiding a transaction. In that case, both parties to a contract of sale entered into an option contract without realizing that the option violated the Rule Against Perpetuities at the time they entered into the agreement. <u>Id.</u> The Court of Appeals considered New York Civil Practice Law and Rules Section 3005, which provides that "when relief against a mistake is sought in an action or by way of defense or counterclaim, relief shall not be denied merely because the mistake is one of law rather than one of fact." N.Y. C.P.L.R. § 3005 (McKinney 2014). Interpreting that Section, the court explained that the provision does not equate all mistakes of law with mistakes of fact, but "removes technical objections where recoveries can otherwise be justified by analogy with mistakes of fact." <u>Symphony Space</u>, 88 N.Y.2d at 484-85 (internal citation omitted). The court held that the parties' misunderstanding of New York's Rule Against Perpetuities was truly a mistake of law, and Section 3005 did not direct undoing the transaction between the parties. <u>Id.</u> at 485-86.

The Defense argues that in this case, as in <u>Symphony Space</u>, the parties had complete knowledge of the facts and reached an erroneous conclusion as to their legal effect—here, the correct statutory maximum sentence. (Def.'s Letter-Mot. at 6.) According to the Defense, because all persons are presumed to know and understand the law, this mutual mistake of law does not merit undoing the plea agreement between the parties. (<u>Id.</u>)

In response, the Government analogizes to <u>Gould v. Board of Educ. of Sewanhaka Cent. High School Dist.</u>, 81 N.Y.2d 446 (1993). In that case, the petitioner was a teacher who had previously achieved tenure in New York City. <u>Id.</u> at 449. She later began teaching in another

district, informing the new district that she had worked long enough to acquire tenure in her previous position.  Id.  Two-and-one-half years later, that teacher was advised by the new district in which she worked that she would be terminated.  Id.  Thereafter, to avoid having the recommendation for termination permanently on her file, she resigned.  Id. at 449-50.  However, her proposed termination and her resignation were both premised on a mutual mistake of fact as to a critical element—both parties believed that the teacher was a probationary employee who could be terminated.  Id. at 453.  In fact, because the teacher had previously acquired tenure in New York City, she had acquired tenure by estoppel by statute and could not be fired.  Id.  The court held that "where, as here, such a misconception concerning a critical aspect of petitioner's employment pervades the entire transaction, we conclude that the general principles of mutual mistake in the formation of contracts provide an additional related basis for treating petitioner's resignation as a nullity."[4]  Id.

The Government argues that in this case, as in Gould, the parties to the contract were aware of the actual facts underlying their contract, although they mistook the consequences of those facts.  (Gov't's Letter-Opp'n at 13.)  In Gould, both parties believed that the teacher was still teaching on a probationary term, even though she had acquired tenure by estoppel based on facts known to both parties.  (Id. at 14.)  Similarly, the Defense and the Government believed that the 2001 conviction was a prior narcotics felony, even though they were both aware of the facts indicating that the 2001 felony narcotics conviction became final after the 2000 crack cocaine distribution conspiracy.  (Id.)

---

[4] An additional basis for this holding that the court considered was whether the teacher's waiver of her state-protected tenure rights was voluntary.  Id. at 452.  The petitioner argued that because she was unaware of her tenured status and resigned in good faith, believing that she was only probationary, she could not be held to have voluntarily waived rights she had unknowingly acquired in her position.  Id.  The court did not determine whether waiver principles supported voiding the teacher's resignation, instead basing its holding on contractual principles of mutual mistake.  Id.

The Second Circuit has observed that "[t]he border line between mistakes of law and fact is often very thin," Dixon v. Pacific Mutual Life Ins. Co., 268 F.2d 812, 814 (2d Cir. 1959), and that observation is particularly true here. In this case, however, there is no disagreement between the parties that enhanced sentencing would apply if the 2001 conviction were indeed prior to the end of the 2000 crack cocaine distribution conspiracy being pled to here. It is the presumption in the plea agreement that Williams' 2001 conviction was before the 2000 crack cocaine distribution conspiracy that is erroneous. This mutual mistake is analogous to the mutual mistake in Gould, in which the New York Court of Appeals found that the misconception about the petitioner's status was a mistake of fact, even though both parties were aware of all the necessary information to correctly determine her probationary status. Having considered the arguments presented on each side, this Court therefore concludes that the mutual mistake made by the parties is a mistake of fact.

### B. The Significance of the Mutual Mistake

The Second Restatement of Contracts provides that a mutual mistake in a contract renders that contract voidable where the mistake was made "as to a basic assumption on which the contract was made [that] has a material effect on the exchange of performances." Restatement (Second) of Contracts § 152 (1981). Here, the mutual mistake made as to Williams' statutory maximum term of imprisonment was a basic assumption on which the contract was made, and has a material effect on the exchange of performances.

A term is a basic assumption of the agreement when it goes to the heart of the agreement between the parties. Travelers Indem. Co. of Illinois, 322 F. Supp. 2d at 497. A review of the plea agreement indicates that the availability of a statutory sentencing enhancement under 21 U.S.C. § 841(b)(1)(C) was such a basic assumption. The plea agreement provides several

"understandings" upon which the Government would accept a guilty plea to the sole count of the S6 information, a crack cocaine distribution conspiracy taking place in or about 2000, from Larry Williams. (Plea Agreement at 3.) The first of these understandings states that the Government would file a prior felony information that would subject Williams to the enhanced sentencing provisions of 21 U.S.C. § 841(b)(1)(C). (Id. at 3.) The agreement then provides, in several different locations, that because of the enhanced sentencing provisions, Williams would be subject to a maximum statutory term of imprisonment of thirty years. (Id. at 3, 7, 9.) The inclusion of this understanding, and its prominence, suggests its importance to the parties in reaching the plea agreement.

In addition to the language of the plea agreement, the plea allocution before Judge Jones demonstrates that the parties intended to specify a range of permissible sentences, with a statutory maximum of thirty years, and afford the sentencing court discretion to sentence Williams within that agreed-upon range. The plea agreement provides that "[t]he defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence." (Plea Agreement at 8.) In the plea allocution, Judge Jones explained that, pursuant to the agreement, a prior felony information would be filed, and Larry Williams stated that he understood that the sentencing court would have discretion to sentence him to any period of incarceration from zero to the statutory maximum of thirty years. (Plea Hr'g Tr. at 20.)

The mutual mistake as to the applicability of the statutory sentencing enhancement under 21 U.S.C. § 841(b)(1)(C) means that Williams is subject to a statutory maximum sentence of twenty years' imprisonment, rather than the statutory maximum term of thirty years specified in the plea agreement and allocuted to before Judge Jones. In light of the mutual mistake, if the

2012 plea agreement is enforced, the Government would remain bound by its obligations under the agreement—specifically, to file a nolle prosequi dismissing with prejudice counts one through four of indictment S3 02 Cr. 1372 (BSJ), of which Williams was convicted at trial in October 2004—without receiving the benefit of its bargain, the opportunity to seek a sentence of up to thirty years' imprisonment. (Plea Agreement at 3.)

Because the language of the plea agreement and the plea allocution before Judge Jones indicate that the statutory maximum sentence was a material term in the parties' bargained-for exchange that was not intended to be left to the discretion of the sentencing judge, a mistake as to the thirty-year statutory maximum sentence is a substantial mistake that goes to the heart of the agreement between the parties.

### C. Whether the Government Bore the Risk of the Mistake

Under the law of contracts, a party bears the risk of a mutual mistake when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." ACA Galleries, Inc. v. Kinney, 928 F. Supp. 2d 699, 702 (S.D.N.Y. 2013) (quoting Restatement (Second) of Contracts § 154(b) (1981)). The Defense argues that, even if the mutual mistake was a mistake of fact that went to the heart of the plea agreement, the Government bore the risk of the mistake and should therefore be bound by the agreement.

In support of this argument, the Defense relies on Judge Cedarbaum's decision in ACA Galleries.[5] (Def.'s Letter-Reply at 3 (citing ACA Galleries, Inc. v. Kinney, 928 F. Supp. 2d 699,

---

[5] The Defense also argues that "[u]nder contract principles, the United States assumes the risk that an ambiguous plea agreement will be construed against it." United States v. Frownfelter, 626 F.3d 549, 556 (10th Cir. 2010). However, in its Reply, the Defense conceded that in this case, "neither the language of the plea agreement nor the applicable law was ambiguous." (Def.'s Letter-Reply at 6.) Because the parties are in agreement that there is no issue of ambiguity in the plea agreement, this argument will not be addressed.

701 (S.D.N.Y. 2013)).)  In that case, the court denied ACA's motion to rescind a contract for the sale of artwork after discovering that the artwork was a forgery post-purchase.  928 F. Supp. 2d at 701.  The court held that the doctrine of mutual mistake could not be invoked by ACA to avoid "consequences of its negligent behavior" since ACA negligently failed to authenticate the painting before purchase.  Id. at 700-01.

In ACA Galleries, the party seeking to avoid its obligation to perform on the contract had entered into the contract despite its limited knowledge with respect to the facts to which the mistake related.  See id. at 702.  It was appropriate to require ACA to bear the risk of the mutual mistake because "in a sense, there was not a mistake but 'conscious ignorance.'"  Restatement (Second) of Contracts § 154 cmt. c (1981).  The circumstances here, by contrast, do not demonstrate that the Government was consciously ignorant of the facts to which the mutual mistake related.  Rather, the circumstances indicate that both the Defense and the Government were aware that Williams' prior felony narcotics conviction became final on April 30, 2001, (Prior Felony Information at 1), and that Williams was pleading guilty to a crack cocaine distribution conspiracy that took place "in or about 2000."  (Plea Hr'g Tr. at 13.)  Because neither party was aware of its limited knowledge or negligently declined to learn additional facts, the Government cannot be said to bear the risk under the principles of contract law.

The Defense nevertheless urges this Court to find that the Government is bound to perform on the plea agreement because the Court must hold the Government to "the most meticulous standards of both promise and performance…in engaging in plea bargaining."  United States v. Mozer, 828 F. Supp. 208, 216 (1993) (internal citation omitted).  In Mozer, Judge Leval found that the government attorneys had wrongly accused the defendant of having repudiated the agreement and, thus, misleadingly convinced the judge hearing the plea allocution

not to accept the defendant's plea.  Id. at 213-15.  The court further found that the government was seeking to withdraw the plea agreement without a valid law enforcement reason.  Id. at 215.  Considering those facts, the court found that the government was bound to perform on the plea agreement.  Id. at 216.

Here, unlike Mozer, the parties made a mutual mistake in the plea agreement.  Here, unlike Mozer, there is no implication that the Government misled the Court or the Defense.  This case is therefore distinguishable from the Mozer opinion.  Though the government must always be held to high standards when it enters into plea agreements, those high standards do not warrant enforcing the flawed plea agreement over the Government's objection in this case.

## IV.   CONCLUSION

For the reasons discussed herein, the plea agreement between Larry Williams and the Government is void and unenforceable against the Government.

SO ORDERED.

Dated:  New York, New York
        July 17, 2014

                                                    /s/

                                            Robert P. Patterson, Jr.
                                            United States District Judge


**Copies of this Opinion & Order Sent To:**

**Alexander Edward Eisemann**
Eisemann Law Office
282 Katonah Avenue, Suite 244
Katonah, NY 10536
914-763-6444
Email: aee@eisemannlaw.com

**Lawrence H. Schoenbach**
Law Offices of Lawrence H. Schoenbach
111 Broadway
New York, NY 10006
212 346-2400
Email: schoenbachlawoffice@att.net

**Michael Douglas Maimin**
U.S. Attorney's Office, SDNY (St Andw's)
One St. Andrew's Plaza
New York, NY 10007
(212)637-2238
Email: Michael.Maimin@usdoj.gov