UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>LARRY WILLIAMS,<br><br>Defendant. | 02-cr-01372 (ALC)<br><br>**<u>OPINION AND ORDER</u>**<br><br>**<u>FILED UNDER SEAL</u>** |

**ANDREW L. CARTER, JR., United States District Judge:**

On October 27, 2004, a jury in the Southern District of New York returned a guilty verdict against Defendant Larry Williams on a four-count Indictment that charged Williams with conspiracy to distribute crack cocaine, and carrying a firearm and causing the murder of another individual during the course of that narcotics conspiracy. Over the ensuing twelve years, this case has followed a winding path, before three district court judges. Presently pending before the Court is Williams' motion to compel discovery in connection with his pending post-trial motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure. For the reasons that follow, Williams' motion is granted in part and denied in part.

## BACKGROUND

The Court assumes the parties' familiarity with the facts.

The Honorable Barbara S. Jones presided over Williams' case through trial and certain post-trial motions. After Judge Jones retired from the bench, the case was reassigned to the Honorable Robert P. Patterson. Just before the reassignment to Judge Patterson, the parties agreed to a post-trial disposition of the case, pursuant to which Williams pleaded guilty to a Superseding Information charging him with one count of participating in a conspiracy to distribute crack cocaine. Williams pleaded guilty to the Superseding Information in December 2012.

Prior to sentencing, however, the parties discovered that one of Williams' prior convictions could not be considered for purposes of calculating his sentence. Judge Patterson ruled that, as a

result, the parties' 2012 plea agreement was void and unenforceable. ECF No. 392. Williams therefore sought a decision on the post-trial motions that had been pending prior to his plea. In connection with those motions, Williams seeks certain discovery, the issue presented here.

By letter dated November 23, 2016, Williams requested certain discovery from the Government in connection with his Rule 33 motion for a new trial. ECF No. 473 ("Def's Ltr."). Williams sent a copy of this letter to the Court as well. The Government responded to Williams' letter on December 9, 2016. ECF No. 470 ("Gov't Ltr."). While Williams' November 2016 letter was addressed to the Government, he requested "that this Court review these requests for additional discovery." Def's Ltr. at 2. Therefore, the Court construed Williams' letter as a motion to compel discovery.

In particular, Williams seeks:

1. The recorded audio interview of Derek Bethel by Newport News, Virginia authorities in or about 2002;

2. The grand jury testimony of Darren Flythe and Larry P. Rilee provided in Circuit Court for the City of Newport News, Case Nos. 44137-00, 44138-00, 44139-00, as well as their rough notes of interviews with Derek Bethel, Lavar Gale, Kareem Holland, and Shawn McCoy;

3. The portion of Jencks Act material relating to Tyrone Kindred not previously provided (3501F-3501K);

4. All notes, reports, memoranda, or writings of any kind of Tyrone Kindred's statements in connection with the instant case, *United States v. Vernon*, 03-cr-0271 (JES), or *United States v. Rodriguez*, 03-cr-1501 (SAS), including the rough notes of Sheila Knickens, Ronald Gardella, and Detective Duguid, and the names of all case agents present at all proffer sessions;

5. All notes, reports, memoranda, or writings of any kind of Kareem Holland's proffered statements in connection with the instant case, including the rough notes of Misty Mercer, as well as the names of all case agents present at all proffer sessions;

6. The names of any individuals affiliated with the Witness Security Program who served as liaisons for Derek Bethel, Clevon Edge, and Jason Lawton during the period of the defendant's trial in the instant case, as well as all reports, notes, memoranda, documents, e-mails or writings of any kind which were generated or obtained by those liaisons in

relation to the location and movements of Derek Bethel, Clevon Edge, and Jason Lawton during the period of the defendant's trial; and

7. All rough notes taken by Patrick Ahearn, William Hess, and Terry Malone.

Def's Ltr. at 2-3.

The Court denied Williams' discovery requests to the extent that Judge Jones already considered and denied them. ECF No. 444. As a result, Williams' requests numbered two through five are not pending before the Court. *See* ECF No. 233 (Order dated Dec. 8, 2005), at 8-11.[1]

The Court also directed the parties to meet and confer regarding Williams' remaining requests. ECF No. 444. When the remaining issues could not be resolved, *see* ECF No. 448, the Court held a conference at which the Court ordered the parties to file any additional documents necessary to the adjudication of the pending discovery request. ECF No. 450, Transcript dated Feb. 23, 2017 ("Tr."). The Court now considers the motion fully submitted.

## LEGAL STANDARD

Generally speaking, a district court has "broad discretion to fashion discovery mechanisms suitable to the case before it." *United States v. Velarde*, 485 F.3d 553, 560 (10th Cir. 2007). However, the standard governing the availability of discovery in connection with a defendant's motion for a new trial pursuant to Rule 33 is far from settled. Nevertheless, most courts—including Judge Jones, as discussed further below—seem to acknowledge that, in certain circumstances, some discovery may be appropriate as part of the post-trial factual development. *See, e.g., United States v. Forbes*, 790 F.3d 403, 411 (2d Cir. 2015) (noting that it reviews "a district court's denial of a post-trial Rule 33 hearing or discovery for abuse of discretion"); *Velarde*, 485 F.3d 559-60; *United*

---

[1] Judge Jones previously held that the Government had complied with its obligations under 18 U.S.C. § 3500. While Holland's 3500 material was not at issue in the motion that led to this finding by Judge Jones, her ruling is broad, and the Court is bound by the law of the case. *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). In any event, the Government asserts that they have no reason to think that previous Assistant United States Attorneys failed to make appropriate disclosures and Williams has not articulated what, if anything, informs his belief that he is missing discovery regarding Holland.

3

*States v. Thompson*, 335 F. App'x 876, 882 (11th Cir. 2009); *United States v. Wolfson*, 413 F.2d 804, 808 (2d Cir. 1969); *United States v. Scrushy*, 2012 WL 139259, at *1-2 (M.D. Ala. Jan. 18, 2012) (citing *Velarde*); *United States v. Agunbiade*, No. 90-cr-610 (JRB), 1995 WL 351058, at *7 (E.D.N.Y. May 10, 1995).

When discussing the applicable standard, some courts refer to the standards governing discovery in *habeas corpus* petitions as an analogous collateral proceeding. *See Velarde*, 485 F.3d at 559-60. Others note that they are guided by Rule 16 of the Federal Rules of Civil Procedure. *See United States v. Bin Laden*, No. 98-cr-1023 (KTD), 2005 WL 287404, at *11 (S.D.N.Y. Feb. 7, 2005) (quoting *United States v. Yousef*, No. 93-cr-180 (KTD), 1999 WL 714103, at *4 (S.D.N.Y. Sept. 13, 1999)). Discovery is available in connection with a *habeas corpus* petition only upon a showing of "good cause" which requires the petitioner to "present specific allegations that give the Court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Pizzuti v. United States*, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)) (internal quotation marks omitted, alteration in original). The Court will apply that standard here.

## DISCUSSION

### I. Audio Recording of 2002 Derek Bethel Interview

First, Williams requests the recording of Derek Bethel's 2002 interview by members of the Newport News, Virginia Police Department. This request is denied. As Williams acknowledges, the Government previously produced a transcript of this interview to him, but he is concerned about certain "inaudible" notations as well as the accuracy of the transcript, generally. However, Williams has failed to articulate any basis for believing that the transcript is inaccurate, nor has he explained why, based on the context of any inaudible portions for example, he has reason to believe that the inaudible statements may be exculpatory or otherwise entitle him to relief. Tr. 18:6-8 ("[I]n

terms of the audio recording, it seems to me that I don't know what it will or will not say."). In the 30-page transcript, there are six notations indicating that a portion of a sentence was inaudible. *See* ECF No. 461, Ex. 4 (Transcript of Bethel Statement) (under seal). Based on their context, it is not immediately apparent to the Court that any missing statement would help Williams prove that he is entitled to a new trial. This is particularly true given Bethel's later testimony that he lied during this recorded interview, reducing the potential probative value of any inaudible portions. *See* Gov't Ltr. at 12.

## II. Information Regarding Movement and Location of Derek Bethel, Clevon Edge, and Jason Lawton during Williams' Trial

Next, Williams requests information aimed at understanding where Derek Bethel, Clevon Edge, and Jason Lawton were located during Williams' trial and whether they could have been produced to testify on a more expedited basis than the Government asserted. He seeks this information in support of his argument that the Government made misrepresentations concerning the production of these proposed witnesses, and that Judge Jones relied on those misrepresentations when denying Williams' request for a continuance of the trial. *See* ECF No. 472 (Defendant's Consolidated Letter Brief, dated Nov. 23, 2016 ("Def's Memo.")), at 13-18. The Government contends that this argument is a "sideshow" and Williams should be denied discovery. Gov't Ltr. at 14-15. For the reasons that follow, the Court finds that, consistent with Judge Jones' prior rulings, some limited discovery is warranted on this topic.

First, a recitation of the chronology is necessary to contextualize Williams' argument. At trial, after the Government rested, Williams sought to have Bethel, Edge, and Lawton produced to testify on his behalf, against the advice of his trial counsel. On Tuesday, October 19, 2004, after a proffer by Williams' counsel regarding the scope of the potential testimony, Judge Jones ordered the Government to produce Bethel, Edge, and Lawton. However, it was not clear how quickly they could be brought to court. Trial Tr. 2440:2-10. First, the Government stated that neither Edge nor

5

Bethel were in the Southern District of New York, a statement they corrected almost immediately regarding Edge; they did not know where Edge was. *Id.* at 2426:22-2427:12. Shortly thereafter, the Government stated that each witness "may be obtainable," but they remained unsure whether the witnesses could be produced in the short time frame contemplated by Judge Jones—by that Thursday, October 21. *Id.* at 2430:15-23.

The following day, the Government stated that it would take at least two weeks to bring Bethel and Lawton to court. Bethel was not in the district and, while Lawton had been in the district on October 18, he was taken to the hospital thereafter. The Government remained unsure about Edge's location. *Id.* at 2474:25-2475:19. In response, Judge Jones directed the Government "to find out how quickly they can be brought here on an expedited basis." She then would consider whether that would be "quick enough," advising the parties that she did not intend to adjourn the trial for two weeks to allow Williams to present this testimony. *Id.* at 2476:12-16.

On October 21, the Government informed the Court—incorrectly it turns out—that "none of [the witnesses] [were] in the district." *Id.* at 2489:5. They asserted that Edge potentially could be brought to court by the following Monday, October 25, but that Lawton and Bethel were "further removed from the district" and likely could not be brought to court before the end of the following week. *Id.* at 2489:10-18. Based on these representations, the Court denied Williams' request for an adjournment to call Bethel, Edge, and Lawton as witnesses. *Id.* at 2490:15-25.

During the course of post-trial proceedings, Williams learned that Edge was, in fact, present in the Southern District of New York during the relevant time period and that Bethel was in custody in New Jersey. Judge Jones allowed Williams to subpoena the Bureau of Prisons ("BOP") regarding the whereabouts of Bethel, Edge, and Lawton. In response, he received a declaration from Stephen J. T'Kach, the Associate Director of the Office of Enforcement Operations, Criminal Division, of the United States Department of Justice, which subsequently was amended to include

6

more detail. *See* ECF No. 461, Ex. 7 (Declaration of Stephen J. T'Kach dated Nov. 7, 2007) (under seal), Ex. 9 (Declaration of Stephen J. T'Kach dated Jan. 11, 2008 ("T'Kach Decl.")) (under seal). In his declaration, T'Kach confirmed that Edge was present in the Southern District of New York from August 24 to November 30, 2004. T'Kach Decl. ¶ 8. His statements regarding Bethel and Lawton corroborated the Government's statements at trial. *Id.* ¶¶ 6-7. He further asserted that the BOP requires ten business days' notice to produce individuals like Bethel, Edge, and Lawton, who are in the Federal Witness Security Program, and that this requirement "is not dependent upon the facts of a particular case. This time frame is imposed regardless of where a protected witnesses is located or where that witness needs to be produced, since any other policy would provide an indication about where the protected witness previously had been held." *Id.* ¶ 10. With respect to Bethel's location, in June 2015, Williams provided a November 7, 2014 affidavit from Bethel in which Bethel states that he was in federal custody in New Jersey during the relevant time period. ECF No. 461, Ex. 1 (Bethel Statement) (under seal), at 3.

Two issues arise from this chronology. First, whether the Government misrepresented the location of Bethel, Edge, and Lawton. All parties agree that the Government incorrectly stated that Edge was not in the Southern District of New York on October 21, 2004. Def's Memo. at 14; ECF No. 461, Ex. 12 (Letter from AUSA Elizabeth F. Maringer dated May 2, 2008) (under seal), at 5; T'Kach Decl. ¶¶ 6-8. Further, there appears to be no question that the Government correctly stated that Bethel and Lawton were not located in the Southern District of New York. Accordingly, it is not clear that further evidence regarding these witnesses' location and movements is necessary.

However, the second, more difficult issue, is whether the Government misrepresented the speed with which these witnesses could be brought to court and, similarly, whether T'Kach sufficiently responded to the question of how quickly Bethel, Edge, and Lawton could have been brought to the district. The T'Kach declaration purports to answer that question, but, as Williams

7

points out, the answer is more complicated. Def's Memo. at 14. By T'Kach's own testimony, the ten-business-day time frame for the production of witnesses was not always required. He acknowledged that the Marshals were able to produce Lawton within seven business days of a party's request in another case. T'Kach Decl. ¶ 7 (Lawton produced on Nov. 3, 2004 pursuant to Oct. 25, 2004 request). Similarly, it appears that, during Williams' trial, the Government believed Edge could have been produced within one calendar week of the initial request. Trial Tr. 2489:10-18 (offering that Edge could be produced by Oct. 25, 2004 based on Oct. 19, 2004 request).

Judge Jones previously determined that some discovery related to this issue was warranted in connection with Williams' second Rule 33 motion when she so-ordered subpoenas to the BOP. Thereafter, Williams raised the sufficiency of the BOP's subpoena response, but Judge Jones did not have occasion to rule on that motion. *See* ECF No. 461, Ex. 11 (Transcript of Apr. 2, 2008 Hearing on BOP Subpoenas); ECF No. 297 (June 2, 2008 Order). Under the law of the case doctrine, the Court will adhere to Judge Jones' previous determination that discovery on this question is appropriate in connection with the pending Rule 33 motion and finds that some further factual development is required. *Quintieri*, 306 F.3d at 1225 ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise.") (internal citation and quotation marks omitted). However, the information Williams seeks is far more than should be necessary to resolve the outstanding questions; namely, whether, notwithstanding the standard ten-business-day timeframe, Bethel, Lawton, or Edge could have been produced more quickly than the Government represented, and what, if any, efforts the Government or the BOP made in that regard. One or more declarations to that effect should suffice.

### III. Notes by Patrick Ahearn, William Hess, and Terry Malone.

Finally, Williams requests the production of all "rough notes" taken by Patrick Ahearn of the New York City Police Department and William Hess and Terry Malone of the Westchester County Police Department. While Williams does not explain the purpose for which he seeks these notes, ███████ Judge Jones' rulings are not as simple as the Government asserts, but the Court nevertheless agrees that Williams is not entitled to the discovery he seeks.

By Order dated October 1, 2004, Judge Jones denied Williams' "motion requesting that the 'instant indictment be quashed with prejudice,'" ███████ However, Judge Jones also noted that the Order was "not a ruling on whether or not Williams may advance evidence at trial with respect to this defense." *Id.* During trial, Williams tried to present evidence on this topic on three occasions: during Hess' testimony, during his own testimony, and ███████ At each turn, Judge Jones ruled that the evidence was inadmissible, albeit for different reasons.

Prior to, and during, Hess' testimony, Judge Jones concluded that ███████ However, at this particular juncture, it seems that Williams' counsel intended to elicit testimony

9

from Hess that he never saw Williams sell drugs, ███████████████████████████████████.
Trial Tr. 2007:12-2008:11. ███████████████████████████
███████████████████

In the context of Williams seeking to subpoena his Virginia attorney and various state prosecutorial witnesses, Judge Jones explained that her October 1 Order "left the door open in case [she] heard anything that would be admissible. Because [she] didn't assume that [Williams] had told [her] everything [he] might want to prove at trial. ███████████████████
███████████████████████████████ What [Williams offers] to [the Court] now is not admissible, it is irrelevant." Trial Tr. 1988:16-22. Specifically, Williams wanted to prove that "[h]e was charged in Virginia with certain narcotics violations. ███████████████
████████████████████████████████████████████████████
███████████████████████████████████████████ Judge Jones held that she did not "understand that to be a relevant defense in this case." *Id.* at 1990:4-5. ██████
████████████████████████

Finally, during Williams' own testimony, ███████████████████████
████████████████ ██████████████████████ The Government objected and, during a sidebar, Judge Jones held that she would allow Williams to testify █████
█████████████████████████████████████ but wanted a preview of that testimony. ████████████ During the course of these discussions, Williams expressed his dissatisfaction that the Government would be allowed to rebut this evidence by re-calling Hess. He also did not want to be subjected to cross-examination on the topic. Williams' refusal to withstand cross-examination led Judge Jones to strike his testimony. *Id.* at 2559:10-2560:1, 2568:6-2569:24, 2588:17-2589:15. ████████████████████████
████████████████████████████████

10

From Judge Jones' various rulings, ███████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████ Accordingly, the Court is not bound by any ruling by Judge Jones on the materials Williams seeks at present.

Nevertheless, the Court concludes that there is no basis to provide Williams with the discovery he seeks. The notes, if produced, would not be "newly discovered evidence" in support of his motion for a new trial ████████████████████████
████████████████████████████ *United States v. Owen*, 500 F.3d 83, 87-88 (2d Cir. 2007) (on Rule 33 motion, consider whether evidence could have been discovered during trial with due diligence); *see also Forbes*, 790 F.3d at 410-11 (district court properly denied request for discovery and evidentiary hearing when evidence would not be considered "newly discovered").

Nor does the "newly discovered evidence" Williams has already presented in support of his entrapment defense justify the request. *See* Def's Memo. at 22-23; ECF No. 461, Ex. 5 (Declaration of Kenya Belnavis ("Belnavis Decl.")) (under seal).² ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████ Without more, Williams has not presented the Court with any evidence that notes from

---

² Williams also contends that "investigator notes found after trial in trial counsel's case file" support his argument on this point. Def's Memo. at 23. However, he effectively concedes that these notes are not newly discovered evidence; his trial counsel had the documents, but simply felt like he did not have enough time review Williams' previous counsel's case file.

Ahearn, Hess, or Malone would support his motion for a new trial, and the Court sees no reason to reopen discovery on this topic.

## CONCLUSION

For all of the foregoing reasons, Williams' motion to compel discovery is granted in part. Consistent with this Order, Williams should provide the Court with a subpoena directed to the BOP on or before August 25, 2017.

**SO ORDERED.**

Dated: August 21, 2017
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**